RECEIVED
IN LAKE CHARLES, LA.
JAN 13 2010
TONY R. MOORE, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| UNITED STATES OF AMERICA | : | DOCKET NO. 2:06 CR 20089-014 |
|---|---|---|
| VS. | : | JUDGE MINALDI |
| ROBERTO ZAMORA | : | MAGISTRATE JUDGE KAY |

### MEMORANDUM RULING

Presently before the court is the defendant's Motion for Judgment of Acquittal, or Alternatively, For a New Trial [doc. 593]. This motion has been opposed [doc. 594] by the Government.

### Rule 29(c)(1) Standard

Motions for judgment of acquittal must be made within seven days after the verdict or the discharge of the jury or "within any other time the court sets during the 7-day period." Fed.R.Crim.P. 29(c)(1).[1]

"A motion for judgment of acquittal challenges the sufficiency of the evidence to convict." *United States v. Lucio*, 428 F.3d 519, 522 (5th Cir.2005). When considering a Rule 29 motion, we "assess whether a reasonable jury could have properly concluded, weighing the evidence in a light most deferential to the verdict rendered by the jury, that all of the elements of the crime charged had been proven beyond a reasonable doubt." *Id.* We do not "analyze the evidence with an eye toward negating every possible inference of innocence, rather, if the fact finder was presented with sufficient evidence to support the verdict reached, that verdict must be upheld." *Id; United States v. Collins*, 243 Fed.App'x. 56, 57-58 (5th Cir. 2007).

### Rule 33 Standard

---

[1] Here, the defense made oral motions immediately following the guilty verdict. This motion is a renewal of the oral motion made at trial and it is timely filed. *United States v. Navarro Viayra* 365 F.3d 790, 792 (9th Cir. 2004).

Rule 33 of the Federal Rules of Criminal Procedure provides the general standard to be applied by district courts in granting new trials: "The court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice." Fed. R.Crim. P. 33; *United States v. Eli,* 1996 WL 511912, 3 (5th Cir. 1996).

## Procedural History

On August 9, 2006, a federal grand jury returned an Indictment charging sixteen (16) defendants with Conspiracy to Possess with Intent to Distribute Cocaine and other Controlled Substances (alleging Five (5) kilograms or more of Cocaine) in violation of Title 21, United States Code, §846 and related offenses. Defendant Roberto Zamora was also charged in Count 5 with Possession of a Firearm in Furtherance of a Drug Trafficking Crime [18 U.S.C. § 924(c)(1)]. Thereafter, on March 11, 2009, the federal grand jury returned a Superseding Indictment adding two (2) new defendants to the eight (8) who had not entered guilty pleas. An arraignment was held on May 12, 2009. At a May 21, 2009 scheduling conference, the trial on the Superseding Indictment was set for November 9, 2009.

On April 9, 20009, the District Court suppressed an un-Mirandized admission by defendant Roberto Zamora concerning the location of a firearm within a residence at 2118 Fulton Street in Houston, Texas, to which he had granted narcotics agents of the Houston Police department permission to search on April 6, 2006.

On November 9, 2009, the trial of the defendants commenced, and on November 13, 2009, the defendant, Roberto Zamora, was found guilty of Count One, Conspiracy to Possess with Intent to Distribute over Fifty (50) grams of Cocaine Base [21 U.S.C. § 846], and Count Five, Possession of a Firearm in Furtherance of a Drug Trafficking Crime [18 U.S.C. § 924(c)(1)].

On November 20, 2009, Roberto Zamora filed a Motion for a Judgment of Acquittal, or in the alternative, A New Trial.

## Evidence Introduced at Trial

## Count One

Numerous former members of the Francisco Chapa-Duran drug trafficking organization testified during the trial about smuggling cocaine into this country from Mexico concealed in motor vehicles at Ports of Entry in the Rio grande Valley of Texas. All drug loads were driven north on U.S. Highways 281 and 77, through the Border Patrol Checkpoints at Sarita and Falfurrias, Texas. The couriers delivered some drug loads in Corpus Christi and Houston, Texas, but many were transported to locations to Georgia, Florida, and North Carolina.

Alberto Ivan Flores testified that on July 12, 2005, he and Betty Valencia entered the Hidalgo, Texas Port of Entry in separate vehicles. She was driving a Volkswagen Beetle automobile, in which Customs and Border Protection officers located several bundles in the dash area. These twelve bundles were found to contain white powder (12.82 kilograms) analyzed to be cocaine.

Flores testified that he and Valencia were driving loads of cocaine from Reynosa, Mexico, to Houston, where they would call a "Gordo" and park the vehicle outside the Galleria Mall, with the keys left in the vehicle, while they shopped. After some hours they would exit the Galleria and drive the vehicle back to the Rio Grande valley.

Flores related that "Pancho" (Francisco Chapa-Duran) had him purchase several Volkswagen Beetle automobiles that were registered the names of unknowing friends. Pancho had the vehicles in Mexico and used them to transport drugs. Yessica Cortez and Angel Torres were two of the individuals who had titled Volkswagen vehicles at Flores's request and testified at trial.

Alberto Ivan Flores admitted to more than ten (10) smuggling trips and identified Chapa-Duran as the source. Flores admitted driving drug loads from Mexico into the United States and then to Houston. During the trial the government introduced certified Texas Department of Transportation title histories for various Volkswagen Beetles showing that they were titled in the name of Angel Torres, Yessica Cortez, and Betty Valencia (Exhibits 4, 5, 156).

### Overt Acts

Sargent Ismael Escobar of the Texas Department of Public Safety and Lieutenant Edward Valadez of the Jim Wells County Sheriff's Office testified about the traffic stop on March 7, 2005, of a Volkswagen Beetle northbound on U.S. Highway 281. The driver, Tammy Nicole DelBosque, lacked a driver's license and insurance papers for the vehicle, which she said belonged to her mother's boyfriend. The driver asserted that she had another Volkswagen Beetle, but it was in the shop. She said she was coming from McAllen and going to Houston, with several inconsistencies. She would ramble on, adding and repeating information not responsive to the trooper's questions. The registration in the glove compartment was in the name of Yessica Cortez.

DelBosque gave verbal consent to search. A narcotics dog from Jim Wells County Narcotics Task Force was brought to the scene. The narcotics dog alerted to the dash. The officers found a manufactured compartment containing bundles inside the dash. Both occupants were arrested and Mirandized. The bundles were subsequently taken to the Texas DPS Crime Laboratory in Corpus Christi where the powder in them was analyzed to be cocaine, 10.91 kilograms net weight (Exhibit 189).

DelBosque testified during the trial that she was recruited to be a drug courier by an individual residing in McAllen. She made two or three trips to Houston driving the Volkswagen for this individual, wherein she would contact her employer by telephone and advise him of her arrival. Then she would enter a mall, leaving the keys in the Volkswagen. After a period, she would re-enter the Volkswagen and drive back to the Rio Grande Valley.

### Count Four

Several federal agents and Houston Police Department narcotics agents testified about their participation on April 4, 2006, in an investigation relating a residence at 2118 Fulton, Houston, Texas. There agents observed a blue 2000 Volkswagen Beetle (TX Y46- RPJ and registered to Angel G. Torres); a black Chevrolet pickup truck (Nuevo Leon MX PW49-612); and a black Chevrolet Camero (TX X95-

HSC)(registered to an Isabel Benavides) parked on or in front of the property.

A short time later a red 2000 Lincoln Navigator arrived with two Hispanic male occupants. Roberto Zamora was observed to move the Volkswagen into the carport, open the hood, and then drape a tarp over it. After a short period, Roberto Zamora began to put things in the Navigator. When the Navigator departed, it was stopped for no front license plate and Roberto Zamora and Leobardo Zamora were identified. After a consent to search the Navigator was refused by Leobardo, the driver, the agents used a narcotics dog to inspect the exterior and received an alert. Nothing was found in the Navigator.

The keys to the front gate, the residence, and the blue Volkswagen were on the console of the Navigator. The agents received from Roberto Zamora a consent to search the residence at 2118 Fulton, Houston, Texas, the black Camaro, and the black Chevrolet pickup truck. Roberto asserted the blue Volkswagen Beetle (bearing Texas license plate Y46-RPJ, and registered to Angel Torres) belonged to his brother Leobardo and he (Roberto) could not consent to its search. Leobardo refused to consent to the search.

A Food Saver Sealer and rolls of plastic for the vacuum sealer were seized from the kitchen of the residence. In the west or Master Bedroom an electronic money counter machine was found, along with two television monitors on top of an Armoire connected to outside security cameras, approximately 7 grams of cocaine also on top of the Armoire, cocaine packaging materials in the trash can (to which the narcotics dog alerted), and a drug ledger indicating sales of at least ten (10) kilograms of cocaine. Latent fingerprint experts with the Houston Police department developed prints from the drug ledger and certain papers recovered from the nightstand in the Master Bedroom that were matched to Roberto Zamora.

A state search warrant was obtained and four bundles of cocaine were found hidden in a secret compartment built into the dash area of the Volkswagen. Photographs of the cocaine in the Volkswagen were introduced.

Testimony that Roberto Zamora had told the agents that there was a pistol under the mattress in the Master Bedroom was elicited through cross examination by Roberto Zamora's attorney. Officers also

testified about Roberto Zamora's admission that he received the Volkswagen from an unknown male at a store parking lot and his brother, Leobardo Zamora, had nothing to do with the cocaine.

The parties entered a stipulation that the controlled substances seized from residence and the Volkswagenwere analyzed at the Houston Police Department Crime Laboratory and found to be cocaine hydrochloride (Lab Report Number: L06-5442) with net weight of 3.9 grams and 3.8 kilograms respectively (Exhibit 238).

There was also testimony during the trial that the black Chevrolet Camaro was involved in an earlier 2005 Houston Police Department narcotics investigation in which cocaine was seized and that the Camaro belonged to Zamora's brother-in-law, who is incarcerated for a drug conviction.

### Sufficiency of Evidence

In order for the petite jury to return a verdict of guilty as to Count One - Conspiracy to Possess with Intent to Distribute Cocaine, it had to be convinced that the government had proved each of the following beyond a reasonable doubt:

> First: That two or more persons, directly or indirectly, reached an agreement to distribute cocaine base;
>
> Second: That the defendant knew of the unlawful purpose of the agreement;
>
> Third: That the defendant joined in the agreement willfully, that is, with the intent to further its unlawful purpose; and
>
> Fourth: That the overall scope of the conspiracy involved five (5) or more kilograms of a mixture or substance containing cocaine.

In order for the petite jury to return a verdict of guilty as to Count Five - Possession of a Firearm in Furtherance of a Drug Trafficking Crime, the jury had to be unanimously convinced beyond a reasonable doubt of two (2) essential elements:

First: That the defendant committed the crime alleged in Count; and

Second: That the defendant knowingly possessed a firearm in furtherance of the defendant's alleged commission of the crime charged in Count 1.

The defendant argues that the evidence, even when viewed in the light most favorable to the prosecution, was insufficient to support this conviction. Zamora asserts that there was a lack of testimony to prove that he participated in, or was aware of, the conspiracy. Zamora further asserts that there was a lack of evidence to support the charge that he possessed the firearm found at 2118 Fulton Street.

The testimony of Alberto Ivan Flores and Tiffany Delbosque describe how the Francisco Chapa-Duran drug trafficking organization procured Volkswagen automobiles and used them to smuggle kilograms of cocaine into the United States and then to distributors in Houston, Texas. The certified title history establishes the Volkswagen Beetle at 2118 Fulton Street was one of the vehicles procured and used for this purpose. The defendant Roberto Zamora made admissions concerning his knowledge of the cocaine in the Volkswagen and the presence of the firearm inside the residence. The drug ledger statements found in the same bedroom had the defendant's fingerprints.

Viewing the evidence and reasonable inferences in the light most favorable to the government, and accepting the jury's credibility determinations, the court finds that there was sufficient evidence to establish beyond a reasonable doubt the guilt of Roberto Zamora. The motion for judgment of acquittal will be denied.

Zamora further asserts that, because there was a lack of evidence of Zamora's guilt, he should be granted a new trial in the interest of justice. Zamora argues that the expert testimony of Debra O'Donnell identifying the notebook as a drug ledger and interpreting the contents of the notebook, the statement by Zamora indicating that he was aware of the location of the firearm, and Government exhibits 277 and 278 were all improperly introduced as evidence and prejudicial to the defendant.

The burden of proving the need for a new trial lies with the defendant.[2] The decision to grant a Rule 33 motion is within the broad discretion of the trial court.[3] In using its discretion, however, the Court is mindful that motions for a new trial are "not favored and should be granted only with great caution."[4]

The Fifth Circuit has adopted the standard that "any error of sufficient magnitude to require reversal on appeal is an adequate ground for granting a new trial."[5] The ultimate test on a Rule 33 motion remains "whether letting a guilty verdict stand would be a manifest injustice."[6]

The defendant has not met his burden of proving the need for a new trial. He has not offered any argument supporting a claim of manifest injustice. Accordingly, the defendant's motion for a new trial will also be denied.

Lake Charles, Louisiana, this 13 day of January, 2010.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

---

[2] *United States v. Sasso*, 59 F.3d 341, 350 (2d Cir.1995); *see also United States v. Ferguson*, 49 F.Supp.2d 321, 323 (S.D.N.Y.1999) (citing *United States v. Soblen*, 203 F.Supp. 542 (S.D.N.Y.1961), *aff'd*, 301 F.2d 236 (2d Cir.1962)).

[3] *See United States v. Ferguson*, 246 F.3d 129, 133 (2d Cir.2001); *see also Sasso*, 59 F.3d at 350; *United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir.1992)).

[4] *United States v. Gallego*, 191 F.3d 156, 161 (2d Cir.1999) (quoting *United States v. Stofsky*, 527 F.2d 237, 243 (2d Cir.1975) (quoting *United States v. Costello*, 255 F.2d 876, 879 (2d Cir.1958)).

[5] *United States v. Wall*, 389 F.3d 457, 474 (5th Cir.2004) (quoting WRIGHT, FEDERAL PRACTICE & PROCEDURE § 556 (3d ed.2004)).

[6] *Ferguson*, 246 F.3d at 134 (citing *Sanchez*, 969 F.2d at 1414).